No. A-CV-07-82

COURT OF APPEALS OF THE NAVAJO NATION

September 30, 1983

NAVAJO TRIBAL UTILITY AUTHORITY, Appellant,

vs.

Mary Lynn FOSTER, Appellee.

Appeal heard February 25, 1983 before Chief Justice Nelson J. McCabe and Associate Justices Marie F. Neswood and Robert B. Walters.

Walter F. Wolf, Jr., of Gallup, New Mexico for Appellant Navajo Tribal Utility Authority and Lawrence Long, Esquire, of Window Rock, Navajo Nation (Arizona) for Apellee.

This is an appeal by an employer who resisted proceedings in the nature of garnishment for past child support in the District Court.

On October 29, 1981 the Navajo Tribal Utility Authority ("NTUA") was served with a writ of garnishment ordering its controller to withhold monies from Benjamin Lee's wages for child support and arrearages on that child support. The NTUA appeared in the District Court to contest the legality of the writ, and appeals the decision of the District Court upholding its original order. On Appeal the NTUA makes these contentions:

1. The Navajo Sovereign Immunity Act, CMY-42-80, bars any action against the NTUA for the purposes of collecting child support from the wages of its employees;

2. Garnishment is not authorized under Navajo law without a specific statute providing for it,

3. Under the circumstances, the writ of garnishment violated due process rights of the NTUA under the Indian Civil Rights Act; and

4. The District Court should have allowed the NTUA to raise the question of a violation of federal statutes restricting wage garnishment.

The heart of this case, and the legal problems which will be address first, is: Does Navajo law provide a legal remedy which may be used to compel employers to pay accrued wages to enforce child support orders or other judgments?

GARNISHMENT AS A REMEDY

There appears to be some confusion about garnishment as a remedy. One definition of the term is that:

"The term 'garnishment' denotes a proceeding by a creditor to obtain satisfaction of the indebtedness out of property or credits of the debtor in the possession of, or owing by, a third person." 6 Am.Jur.2d, Attachments and Garnishment Sec. 2.

It is also defined as:

"A warning to a person in whose hands the effects of another are attached, not to pay the money or deliver the property of the defendant in his hands to him, but to appear and answer the plaintiff's suit."

"A statutory proceeding whereby person's property money, or credits in possession or under control of, or owing by, another are applied to payment of former's debt to third person by proper statutory process against debtor and garnishee." Black's Law Dictionary, "Garnishment," p. 810 (4th Ed. 1968).

It is said that as a general principle of law, garnishment is "regarded as in derogation of the common law and to exist only by virtue of statute. Consequently resort to the statute is necessary to determine the extent and scope of the process." 6 Am.Jur.2d, Garnishment Sec. 9.

Both the definition of the procedure called garnishment and the legal principle that it is a creature only of statute are principles of general American law. They are not necessarily principles of Navajo law, and if they are found to be contrary to either authority granted by the Navajo Tribal Council or Navajo common law (either decisional or customary), then they will be disregarded. 30 Am.Jur.2d, Executions Sec. 88.

What we are talking about is looking to either money or property of an individual which is in the hands of another person in order to satisfy a court judgment or order.

Looking first to the Navajo Tribal Code, the court finds these provisions:

1. "In all civil cases, judgment shall consist of an order of the court awarding money damages to be paid to the injured party, or directing the surrender of certain property to the injured party, or the performance of some other act for the benefit of the injured party." 7 N.T.C. Sec. 701(a).

2. "Whenever the Court of the Navajo Tribe shall have ordered payment of money damages to an injured party and the losing party refuses to make such payment within the times set for payment by the court, and when the losing party has sufficient funds to his credit at the agency office to pay all or part of such judgment, the superintendent shall

certify to the Secretary of the Interior the record of the case and the amount of the available funds. If the Secretary of the Interior the record of the case and the amount of the available funds. If the Secretary shall so direct, the disbursing agent shall pay over to the injured party the amount of the judgment, or such lesser amount as may be specified by the Secretary, from the account of the delinquent party." 7 N.T.C. Sec. 704.

3. "A writ of execution shall be issued by the Clerk of Court and addressed to any Navajo policeman and shall direct him to seize and deliver to the Clerk of Court sufficient unrestricted and nonexempt personal property of the debtor to pay the judgment and costs of sale. It may specify the particular property to be seized." 7 N.T.C. Sc. 706.

4. "The Trial Court shall have power to issue any writs or orders necessary and proper to the complete exercise of its jurisdiction." 7 N.T.C. Sec. 255.

5. ". . . In addition to other remedies, the court may issue an order to any employer, trustee, financial agency, or other person within the territorial jurisdiction of the Tribe indebted to the parent, to withhold and pay over to the clerk of court, moneys due or to become due." 9 N.T.C. Sec. 1303 (Support of child not in its own home).

In addressing the argument of the NTUA over garnishment, it may be said that Navajo law clearly provides for garnishment as to monies held by the Bureau of Indian Affairs on behalf of individual Indians. 7 N.T.C. Sec. 704.

7 N.T.C. Sec. 701(a) gives general authority to the courts to direct the surrender of property to the injured party and it gives the court the authority to order the performance of some act for the injured party. This statute is not restricted to a defendant alone, and it is a grant of general authority. Our execution statute simply provides for an order to a Navajo policeman to seize the judgment debtor's property (including specified property), and there is no restriction that the property has to be in the judgment debtor's hands. While general American laws provide for proceedings which are supplemental to execution to get at property in the hands of a third person, they are not exclusive remedies, "and the possession of property of the execution debtor by a third person does not in itself operate to preclude the right to a levy of execution and a sale thereunder." 30 Am.Jur.2d, Execution Sec. 105.

It is clear that the Navajo courts may issue <u>any</u> writ or order necessary to carry out their jurisdiction, including all orders to enforce a court judgment or order. 7 N.T.C. Sec. 255.

Therefore there are the remedies of execution and proceedings in aid of execution. Specifically there are the procedures of wage execution and income execution. 30 Am.Jur.2d, Sec. 788.

We are not concerned with the labels which may have been used by the District Court. There appear to be proceedings for garnishment which are justified by our statutes and proceedings for wage execution.

If the garnishment procedure is utilized, then process issues to the person holding property for the judgment debtor, requiring him or it to tell the court what property is held and why it should not be turned over. In the situation of a wage or income execution, the writ of execution authorizes the seizure of monies held by third persons and, if they do not have funds payable to the judgment debtor, they can say so.

In order for there to be statutory authority for garnishment proceedings there need not be a statute with a headnote containing the magic word "garnishment". It is enough for the court to have the authority to grant the remedy. The Navajo Courts have such authority under the powers outlined in 7 N.T.C. Secs. 701(a) ("directing the surrender of certain property" and "the performance of some other act for the benefit of the injured party"), 706 ("seize and deliver . . . personal property of the debtor") and 255 ("any writs or orders necessary and proper to complete exercise of its jurisdiction").

Therefore both garnishment and the wage executions are available as remedies in the courts of the Navajo Nation. This court, as it is with the state courts, will exercise any judicial power which is not forbidden, and the broad grant of authority in the original legislative enactments which established the Navajo Courts will be exercised for the benefit of the Navajo People. See, Fitts v. Superior Court, 57 p. 2d 510, 512 (Calif. 1936).

There is an excellent policy basis for our ruling. Can we suppose that the Navajo Tribal Council would grant the courts the authority to order parents to support their children and then let the parents go free by simply refusing to pay that support from their pay checks? Will defaulting fathers or mothers be permitted to laugh at court orders, risking jail terms but not paying over for the support of their children? Can we assume that the Navajo Tribal Council intended that the judgment of its courts have no teeth?

This court does not create any new remedy today. This court does not engage in judicial legislation. We are only carrying out the plain import of the statutes which give the courts the authority to act.

As a matter of practical guidance to the trial courts, the procedures sanctioned by this court today are:

1. The issuance of a writ of garnishment requiring a third party holding sums payable to a judgment debtor to appear in court to state whether and in what amounts monies are owed to the debtor for the purpose of the entry of an order against the third party to pay the money over.

2. Applications to the court to issue a writ of execution upon the wages of a judgment debtor, which will be served by the Navajo Police by making an inquiry of the employer as to employment and wages owing, and receiving those sums permitted by Federal law.

SOVEREIGN IMMUNITY

While the Navajo Sovereign Immunity Act would normally apply in a case such as this, employers covered by the act should note that an exception to the Act is for suits to compel the performance of a responsibility under the laws of the Navajo Nation, and one such responsibility is compliance with Navajo Court proceedings. While there is general authority that garnishment proceedings are barred under the

doctrine of sovereign immunity, this court follows the precident of Merritt-Chapman & Scott Corp. v. Public Utility Dist. There an attachment in a quasi in rem proceeding against a governmental instrumentality was permitted to stand unless it substantially interfered with the performances of public duties by that instrumentality. 319 F.2d 94 (C.A.2); cert. den. 375 U.S. 968. In addition to the fact that our law exempts actions to compel officials to perform their duties, there is no reason to apply principles of sovereign immunity to a quasi-governmental body solely for the purpose of using its immunity to shield a father who refuses to pay child support. There is no statutory purpose served by such result, and certainly it was not within the intention of the Navajo Tribal Council to say that funds which have accured for payment to a tribal employee and have been set aside for that purpose are to be shielded from the law. The NTUA's own money is not at risk; Only the money which has been earned by an employee and is ready for payment to that employee is affected. We find no substantial interference with governmental operations caused by these procedures.

THE DUE PROCESS CLAIM

In essence the NTUA claims it is entitled to notice and an opportunity to be heard prior to the issuance of a writ of garnishment. This is a very important point, and to the extent that any interest of the NTUA may be injured or property may be taken from it, the assertion is correct.

Navajo Tribal Utility Authority says, "What if the wages owed are less than those in the court order?" Or, "What if the amount in the order would put us in violation of Federal law?" These are excellent questions, and there is a right to be heard.

However these are practical matters. If the normal garnishment procedure as recognized in general garnishment law is followed, then there will be notice to the employer and there will be no due process problem. In the case of wage executions, we hold that it is sufficient if there is an opportunity to be heard. In other words, if there is a writ of execution which the employer cannot comply with or which would place the employer in jeopardy of running afoul of some regulatory statute, then the employer will have the right to object or pay over clearly permissible amounts. It will be sufficient for the employer to advise the Navajo Police for the purposes of a return to the court by the police or for the employer to file an objection with the court and have an opportunity to be heard in that fashion. Attempts by employer to circumvent valid orders which can be paid legally will be dealt with severely as disobedience to a lawful court order.

FEDERAL LAW ISSUES

While the District Court correctly pointed out that the Federal statute in question was made for the protection of the defendant and he should be the one to come forward, since this case will be remanded for further proceedings in harmony with this opinion. The NTUA will have the opportunity to protect itself from potential liability by raising the issue on remand.

A NOTE ON JOE v. MARCUM

The NTUA has brought the Federal appeals case, Joe v. Marcum, to the attention of the Court of Appeals. 621 F.2d 358 (C.A. 10). That case holds that our code does not permit wage garnishment. Id. at 361. With all due respect to our sister court, it interpreted Navajo law as it saw it at the time for the purposes of a case over which it had jurisdiction. This court is the body which has the authority to make final determinations of Navajo law, excepting of course the Navajo Tribal Council when enacting legislation. Therefore we advise the Tenth Circuit Court of Appeals that it was wrong and ask that it abide by this decision in the future.

ORDER

This matter is remanded to the District Court for proceedings in accordance with this opinion.